# IN THE COURT OF APPEALS OF IOWA

No. 20-0464
Filed November 3, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JUSTICE MATHIS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Decatur County, Dustria A. Relph,
Judge.

Justice Mathis appeals his convictions for three counts of second-degree
sexual abuse.  **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,
Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney
General, for appellee.

Considered by Mullins, P.J., and May and Ahlers, JJ.

**MAY, Judge.**

Justice Mathis appeals his convictions for three counts of second-degree sexual abuse. He challenges the sufficiency of the evidence and the district court's submission of a noncorroboration jury instruction. We affirm.

## I. Sufficiency of the Evidence[1]

We analyze sufficiency-of-the-evidence questions for corrections of errors at law. *State v. Folkers*, 941 N.W.2d 337, 338 (Iowa 2020). We consider all evidence presented in the light most favorable to the State, and we draw all reasonable inferences in its favor. *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014). Importantly, we do not weigh evidence, consider the credibility of witnesses, nor do we attempt to resolve evidentiary disputes. *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). Our review is limited only to test evidentiary sufficiency, and so long as substantial record evidence supports the verdict, we will uphold it. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Hearn*, 797 N.W.2d 577, 579–80 (Iowa 2011) (citation omitted).

Mathis was convicted of sexually abusing two children, the older child on one occasion and the younger child on two different occasions.[2] The marshalling instructions required the jury to find Mathis "performed a sex act" on the applicable

---

[1] Mathis makes a number of arguments in the event we conclude he failed to preserve error. Because Mathis preserved error on his sufficiency-of-the-evidence claim, we do not address his contingent arguments.

[2] Mathis stood trial the same time as the children's grandfather who was also charged with sexually abusing them.

child and that he "performed the sex act while [the child] was under the age of 12."[3]

The jury instructions explained

> "sex act" means any sexual contact:
> 1. By penetration of the penis into the vagina or anus.
> 2. Between the mouth of one person and the genitals of another.
> 3. Between the genitals of one person and the genitals or anus of another.
> 4. Between the finger or hand of one person and the genitals or anus of another person.
> You may consider the type of contact and the circumstances surrounding it in deciding whether the contact was sexual in nature.
> Skin-to-skin contact is not required in order to establish a "sex act." Prohibited contact may occur even though the specified body parts or substitutes are covered.

Mathis claims the evidence is insufficient to establish he performed a sex act on either child.

> Both children testified at trial. The older child testified:
>
> Q. Okay. And can you tell me what happened with somebody else? A. Me and [Mathis] were upstairs laying in his bed and then it started happening.
> Q. Okay. And when you say "it started happening," can you tell me what you mean by that? A. I mean sex.
> Q. And so, if you can, tell the jury who—so you said "sex." Who was having sex? A. Justice.
> Q. And when you say the word "sex," what do you mean? A. I mean he was putting his parts in my parts.
> Q. Okay. And when you say your "parts," which part of your body are you talking about? A. My lower parts.
> Q. Okay. And are—so I need you to be just a little bit more specific. Which parts on your lower parts was he putting his parts in? A. My vagina.
> Q. And what part was he putting in your vagina? A. His penis.
> Q. And did you want that to happen? A. No.
> Q. And I think you said earlier that you are 11 now? A. Yes.
> Q. And so did this happen before you turned 11? A. Yes.

---

[3] Mathis did not object to the marshalling instructions or to the definitional instruction for "sex act." So these instructions are "the law of the case for the purposes of reviewing the sufficiency of the evidence." *State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018).

The younger child testified:

> Q. Okay.  So can you tell me, did anything that you didn't want to have happen happen at this house?  A. Yes.
> Q. Okay.  Can you tell me a little bit what happened?  A. Justice made me come upstairs a lot.
> Q. Okay.  And when you say "come upstairs," where did he make you come upstairs to?  A. To his room.
> Q. Is that where he slept?  A. Yes.
> Q. Was that his bedroom?  A. Yes.
> Q. Okay.  And when Justice would make you come upstairs, what would happen?  A. He did the same thing that Grandpa made me do to [the older child].
> Q. Okay.  And you said he would make you do the same thing that Grandpa made you do; is that correct?  A. Yes.
> Q. Did he do those things to you or did you do them to him?  A. He did those things to me.
> Q. And so when you say that he made you do the same things that Grandpa made you do, can you tell me what that is?  A. He made me and him have sex.
> Q. Okay.  And, if you can, how did that happen?  A. He took his clothes off.
> Q. Okay. And what happened next?  A. He told me to take my clothes off.
> Q. And did you do that?  A. Yes.
> Q. And then what happened after that?  A. He stuck his private up me; my butt.
> Q. And when you say "his private," what part of his body are you talking about?  A. His—His penis.
> Q. And you said that he would put that in your butt?  A. Yes.
> Q. Did that happen on more than one day?  A. Yes.

The children's testimony established he performed a sex act on the older child one time and performed a sex act on the younger child at least twice.  And "[T]he alleged victim's testimony is by itself sufficient to constitute substantial evidence of [a] defendant's guilt."  *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998); *accord State v. Atkins*, No. 20-0488, 2021 WL 3895198, at *3 (Iowa Ct. App. Sept. 1, 2021).  So there is seemingly sufficient evidence of Mathis's guilt as to all three counts.

Yet Mathis argues "[t]he evidence in this case supports a finding that the testimony of the complainants is not sufficiently detailed to be considered credible or substantial enough to support convictions" because (1) it is not corroborated by physical evidence; (2) the children did not testify to seeing the other abused by Mathis; (3) the children's testimony as a whole "sometimes contradicted each other"; (4) "to the extent jurors might not expect children of [their] ages to have knowledge of certain sex acts, this is an unhelpful factor in assessing the credibility of the complaints against Mathis" because the children were sexually abused by their grandfather; and (5) Mathis and his mother testified the abuse never occurred. Mathis cites *State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993), for support. Mathis's co-defendant, the children's grandfather, recently raised a similar argument before this court. *Atkins*, 2021 WL 3895198, at *2. We rejected the grandfather's argument, stating:

> The use of the doctrine relied upon in *Smith* to vacate a conviction "is exceedingly rare." *See State v. Hobbs*, No. 12-0730, 2013 WL 988860, at *3 (Iowa Ct. App. Mar. 13, 2013). It is the jury's role as factfinder to "resolve [evidentiary] conflicts in accordance with its own views as to the credibility of the witnesses." *State v. Allen*, 348 N.W.2d 243, 247 (Iowa 1984). *Smith* relied on a narrow exception to this rule where "[t]he testimony of a witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by the court." 508 N.W.2d at 103 (quoting *Graham v. Chicago & Nw. Ry. Co.*, 119 N.W. 708, 711 (Iowa 1909)). The inconsistencies raised in this appeal are of the kind commonly found in prosecutions for child sex abuse, and they do not render the substance of the testimony impossible, as was found in *Smith*.

*Id.* at *3. While the cases are not identical, we believe the same approach is appropriate here.[4] As in *Atkins*, we believe any conflicts in the children's testimony were for the jury to consider.

Reviewing the record in the light most favorable to the verdict, we find sufficient evidence supporting Mathis's convictions on all three counts.

## II. Noncorroboration Instruction

Mathis also claims the court erred in submitting a noncorroboration instruction to the jury. "Our standard of review on issues of jury instructions is for errors at law." *State v. Anderson*, 636 N.W.2d 26, 30 (Iowa 2001).

Here, the instruction at issue stated, "There is no requirement that the testimony of an alleged victim of sexual offenses be corroborated." In the past, this court found no error in the submission of a nearly identical instruction, which stated "[t]he law does not require that the testimony of the alleged victim be corroborated." *State v. Barnhardt*, No. 17-0496, 2018 WL 2230938, at *4 (Iowa Ct. App. May 16, 2018). But this court recently decided *State v. Kraai*, No. 19-1878, 2021 WL 1400366, at *6 (Iowa Ct. App. Apr. 14, 2021), and "disavowed" *Barnhardt*. In *Kraai*, the district court instructed the jury, "There is no requirement that the testimony of a complainant of sexual offenses be corroborated." 2021 WL 1400366, at *2. This court, sitting en banc, determined, "Because [the instruction] mentioned only the complaining witness, the jurors could have believed that the

---

[4] For example, sometimes the grandfather abused the children at the same time, so the children could provide each other supporting testimony with respect to those instances where both were present. But because Atkins abused the children separately, they could not provide the other with supporting testimony as to his abuse.

testimony of other witnesses, particularly the accused, *did* require corroborating evidence to be believed. Because of that asymmetry, we agree . . . that the challenged instruction defied section 709.6 [(2017)]." *Id.* at *3. "We found giving a noncorroboration instruction highlights the testimony of an alleged sexual abuse victim and creates a 'different' standard for evaluating their testimony than that of other witnesses." *Atkins*, 2021 WL 3895198, at *4 (citing *Kraai*, 2021 WL 1400366, at *5–6). Remaining consistent with *Kraai*, we find it was error for the court to submit the noncorroboration instruction.

But error alone does not warrant reversal; we will only reverse if the error prejudices the complaining party. *State v. Plain*, 898 N.W.2d 801, 817 (Iowa 2017). To assess prejudice, we ask whether the guilty verdict rendered was "surely unattributable" to the faulty instruction. *State v. Shorter*, 945 N.W.2d 1, 9 (Iowa 2020) (citation omitted). "We consider the jury instructions as a whole" rather than in isolation. *State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018). We may look to the strength of the State's case to decide whether giving an erroneous instruction is harmless. *State v. Gibbs*, 941 N.W.2d 888, 900 (Iowa 2020). We also look at how the case was tried. *State v. Skahill*, ___ N.W.2d ___, ___, 2021 WL 4928415, at *13 (Iowa 2021).

We conclude reversal is not required here. The facts of this case make clear that Mathis had ready access to the children when they would come to stay at their grandparents' home, where Mathis also lived. And their testimony alone is sufficient evidence to support the convictions. *See Atkins*, 2021 WL 3895198, at *4. Both children's testimony demonstrated they had knowledge of sexual mechanics beyond what children their ages would ordinarily have. Moreover, "the

jury was not left to decipher the noncorroboration instruction in a vacuum." *Kraai*, 2021 WL 1400366, at *8. The jury instructions as a whole "fairly guided the jury's decision making." *See id.* And the parties' closing arguments made clear the jury was to decide who to believe. *See id.* For instance, defense counsel reminded the jury that this was "a classic he-says/she-says case. Because the children each claim they were sexually abused and because Justice denies each of those claims." Counsel went on to say an expert witness made "it absolutely clear that is it is not her job to decide whether the children are telling her the truth. That question is left to you, the jury." While the prosecutor made a passing reference during closing arguments to the fact that the children's testimony did not need to be corroborated, that theme was in no way a focus of the argument. Instead, in both the first and rebuttal closing arguments, the prosecutor focused on evidenced-based and common-sense reasons why the children should be believed. No focus was placed on the noncorroboration instruction or the lack of a legal requirement for corroboration. *Cf. Skahill*, 2021 WL 4928415, at *13 (finding prejudice and granting a new trial when the prosecutor's closing argument repeatedly focused on erroneously admitted video evidence). Given these safeguards and the manner in which the case was tried, we conclude that giving the noncorroboration instruction was harmless error. *See Atkins*, 2021 WL 3895198, at *4 (determining submission of the same jury instruction was harmless error).

**AFFIRMED.**